UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| MICHAEL MELENDEZ, | |
|---|---|
| Plaintiff (Pro Se), | Case Number: 2023-cv-00172-SM |
| v. | |
| UNIVERSITY OF NEW HAMPSHIRE, in its official and individual capacity, LAUREN BERGER, in her official and individual capacity, SHANE COOPER, in his official and individual capacity, NELSON RAUST, in his official and individual capacity, BRAD HINTON, in his official and individual capacity, SOPHIE SPARROW, in her official and individual capacity, EMILY WILCOX, in her official and individual capacity, MEGAN CARPENTER, in his official and individual capacity, and REBECCA PURDOM, in her official and individual capacity, | |
| Defendants. | |

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR
MOTION TO DISMISS THE AMENDED COMPLAINT**

*Pro se* plaintiff Michael Melendez—a law student at the University of New Hampshire ("UNH" or the "University")—brings an amended complaint against the University and a growing number of individual administrators and faculty, arising out of his academic performance in Fall 2022. Plaintiff claims that he was discriminated against because he did not receive certain disability accommodations and that he was subjected to widespread retaliation against him by different faculty and administrators across the University. UNH and Individual Defendants Lauren Berger, Shane Cooper, Nelson Raust, Brad Hinton, Sophie Sparrow, Emily

Wilcox, Megan Carpenter, and Rebecca Purdom (together, "Defendants") hereby bring this Motion to Dismiss Plaintiff's Amended Complaint.

Dismissal on all counts is appropriate where Plaintiff fails to plead sufficient facts to make relief plausible under either the Americans with Disabilities Act ("ADA") or the Rehabilitation Act, neither of which provide for individual liability; Plaintiff fails to allege extreme or outrageous conduct necessary to support a claim for intentional infliction of emotional distress; and Plaintiff failed to satisfy mandatory preconditions to suit under N.H. RSA 354-A. Accordingly, the Amended Complaint should be dismissed in its entirety and with prejudice.

## FACTUAL ALLEGATIONS

Plaintiff Michael Melendez enrolled as a law student at the University of New Hampshire Franklin Pierce School of Law ("UNH Law") in or around August 2020.[1] Dkt. 15 (Amended Complaint ("AC")) ¶ 13.

### *Disability Accommodation*

Plaintiff alleges that, at some point during his career as a UNH Law student, he required accommodation for a disability, which he neither identifies nor describes in the Amended Complaint. *Id.* at ¶ 11-12. Beginning in or around August 2022 (and allegedly continuing through June 2023), Plaintiff alleges that he was excluded from certain UNH programs or benefits—including through his inability to participate in class—as a result of his "mental health and learning disabilities." *Id.* at ¶ 28-29. At some unidentified time, Plaintiff alleges that he made certain requests, though the parameters of such requests are not identified. *Id.* at ¶ 31. Plaintiff claims that Defendants ultimately did not provide him with certain desired

---

[1] Plaintiff's allegations are taken as true for purposes of this Motion to Dismiss only.

accommodations, including, for example, permitting primarily remote attendance, providing "an advisor," or providing "[a]ssistance in completing necessary forms and applications." *Id.* at ¶ 31.[2]

*Wills, Trust & Estates Class*

While enrolled at UNH Law, Plaintiff was a student in a Wills, Trusts, and Estates course taught by Professor Nelson Raust. While conducting class on or about October 5, 2022, Professor Raust directed a question to another attendee, who he identified as Plaintiff's "guest," and invited them to answer. Plaintiff claims that by inviting this individual to participate in class and referring to them as Plaintiff's "guest," Professor Raust somehow "intended to or recklessly brought negative attention to" Plaintiff's undefined disability and "spotlighted the presence and need for" unspecified disability accommodations. AC ¶¶ 50-51. Plaintiff claims that this question caused him such "embarrassment [and] humiliation" that he was unable to continue participating in class and had to leave the room. AC ¶ 52. Professor Raust then allegedly acknowledged Plaintiff's departure by saying goodbye to him. AC ¶¶ 54-55.

*Plaintiff's Internal Complaints*

Plaintiff alleges that between October 2022 and January 2023, he made various complaints, including regarding the alleged interaction during his October 5, 2022 Wills, Trusts and Estates class. Compl. ¶¶ 67-68. In November 2022, Plaintiff alleges that he filed a discrimination complaint with the University's Civil Rights and Equity Office ("CREO"). AC ¶ 92. As best as can be determined, Plaintiff appears to assert that, in or around January 2023,

---

[2] Plaintiff does not specify how any particular Individual Defendant was involved in or responsible for any alleged denials.

3

CREO Assistant Director Emily Wilcox notified Plaintiff of a "denial to investigate claims of federal right violations" or otherwise did not assist him with his complaint. AC ¶ 93-104.

*Plaintiff's Academic Performance*

In this time frame, in or around December 2022, Plaintiff received a failing grade in Wills, Trusts, and Estates. AC ¶ 69. From approximately January through June 2023, Plaintiff alleges that Defendants Brad Hinton and Sophie Sparrow—in connection with UNH Law's student advising program and UNH Law's Committee on Academic Standing and Success ("CASS")—contacted Plaintiff by email and notified him of potential disenrollment from the University. *Id.* at ¶¶ 79-82. Plaintiff concludes that all of the aforementioned alleged conduct caused Plaintiff to suffer harm, including failing grades, humiliation, and aggravation of disability symptoms. *See, e.g., id.* at ¶ 33.

**PROCEDURAL HISTORY**

On or about March 3, 2023, Plaintiff brought the present action against UNH Law and certain originally named individual defendants, bringing claims under the 42 U.S.C. § 1983, the Rehabilitation Act, and the ADA. On or about July 19, 2023, in response to a Partial Motion to Dismiss, Plaintiff filed an Amended Complaint, significantly expanding upon and adapting his theories of liability and adding five new individual defendants in their individual and official capacities. *See* Dkt. 15.

**STANDARD OF REVIEW**

To survive a Rule 12(b)(6) motion, Plaintiff must plead facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. v. Twombly,* 550 U.S. 544, 570 (2007). To do so, the Complaint must allege enough facts to "raise a right to relief above the speculative level." *Id.* at 555. Although the Court accepts as true all well-pleaded facts and draws all reasonable

inferences in Plaintiff's favor, *Parker v. Hurley,* 514 F.3d 87, 90 (1st Cir.2008), the Court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by merely conclusory statements," *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint alleged—but it has not show[n]—that the pleader is entitled to relief." *Iqbal,* 556 U.S. at 679 (internal citations omitted).

## ARGUMENT

### I. Discrimination Claims under ADA and Rehabilitation Act Must Be Dismissed.

Plaintiff's discrimination claims under Title II of the ADA, 42 U.S.C. § 12132 ("Title II"), and Section 504 of the Rehabilitation Act ("Section 504") must be dismissed as against all Defendants because Plaintiff fails to plead sufficient facts to make relief plausible, and even if he had, his claims against all individual Defendants must be dismissed because neither statute provides for individual liability. To state a plausible claim under either statute, a plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker v. Universidad de P.R.*, 225 F.3d 1, 5 (1st Cir. 2000). In other words, Plaintiff must plausibly establish that Defendants engaged in some wrongful action *because of* the Plaintiff's disability. *Lebron v. Com. of P.R.*, 770 F.3d 25, 31 (1st Cir. 2014). Where, as here, Plaintiff claims that he was excluded from participation as a UNH Law student because the University failed to accommodate him, he must plead sufficient facts to demonstrate that UNH's decisions with respect to his accommodation

requests were irrational and not motivated by any conceivable legitimate reason. *Toledo v. Sanchez*, 454 F.3d 24, 33 (1st Cir. 2006).

Plaintiff fails to meet this standard. As an initial matter, Plaintiff does not clearly allege that he actually requested the alleged accommodations and received a denial. He provides no allegations whatsoever to describe or identify his alleged disability, much less evidence to plausibly demonstrate that the alleged accommodations would have been effective or that they were denied without any conceivable legitimate basis. Instead, he appears to summarily conclude that not providing a particular accommodation is inherently wrongful and discriminatory. This fails to meet the plausibility standard. *Cf. Lebron v. Com. of P.R.*, 770 F.3d 25, 31 (1st Cir. 2014) ("Simply alleging in a conclusory fashion that the defendants engaged in 'intentional discrimination,' as does the complaint here, is not enough to satisfy the pleading standard."). Similarly, Plaintiff provides no allegations whatsoever regarding the specific Individual Defendants to explain how, if at all, they were personally involved in or responsible for any alleged denial of an accommodation. Nor does he put forth any allegations establishing a discriminatory motive to do so. Accordingly, claims against all Defendants should be dismissed.

But even if he had plausibly alleged sufficient facts to state an ADA or Rehabilitation Act discrimination claim against UNH, he has failed to do so as to the Individual Defendants. All individuals should be dismissed for the additional reason that—consistent with the majority of Circuit Courts to consider the issue—individuals may not be held personally liable under either statute. Both Acts "provide, in nearly identical language, that 'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 144 (1st Cir.

2014) (citing 42 U.S.C. § 12132; 29 U.S.C. § 794(a)). To state a plausible claim under either statute, Plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker v. Universidad de P.R.*, 225 F.3d 1, 5 (1st Cir. 2000); *Gray v. Hanks*, No. 20-CV-152-PB, 2021 WL 2593613, at *3 (D.N.H. June 8, 2021), *report and recommendation adopted sub nom. Gray v. NH Dep't of Corr.*, No. 20-CV-152-PB, 2021 WL 2592171 (D.N.H. June 23, 2021).

Neither Act, however, provides a cause of action for discrimination against individuals in their personal capacities. Rather, Title II prohibits discrimination by a "public entity," defined as any state or local government, department, agency, or other instrumentality, 42 U.S.C. § 12131(1), while Section 504 prohibits discrimination by a federally-funded "program or activity," whether public or private. *See* 29 U.S.C. § 794(b). Because an individual is neither a "public entity" nor a "program or activity," the District of New Hampshire has consistently held that individuals may not be sued in their personal capacities under either statute. *See, e.g., Gray*, 2021 WL 2593613, at *4 (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (finding no individual liability under Title II)); *Tveter v. Derry Cooperative School District SAU #10,* 16-cv-329-PB, 2018 WL 3520827, at *5 (D.N.H. July 20, 2018) (dismissing Title II and Section 502 claims, holding that "neither the ADA nor the Rehabilitation Act permit individual capacity actions"); *Kiman v. N.H. Dept. of Corrections*, 01-cv-134-JD, 2007 WL 2247843, at *8 (D.N.H. Aug. 1, 2007) (joining five circuits to determine that the ADA does not permit individual liability and reasoning that "public entity" under Title II plainly refers to "collective units, not individuals"); *Abbott v. Town of Salem,* No. 05-CV-127-SM, 2006 WL

7

276704, *4 (D.N.H. Feb. 2, 2006) (dismissing as impermissible individual capacity claims under Title II and Section 504).[3]

Numerous Circuit Courts to consider the issue agree that neither Title II nor Section 504 permit individuals to be sued in their personal capacities for alleged discrimination. *See, e.g.*, *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (no individual liability under Title II), *Alsbrook*, 184 F.3d at 1005 n. 8 (same). Although the First Circuit has not ruled on this issue, it has joined other Circuits in the "virtually universal view" that Title I of the ADA does not provide for individual liability. *Roman–Oliveras v. P.R. Elec. Power Auth.*, 655 F.3d 43, 52 (1st Cir. 2011).

**II.   Retaliation Claims under 42 U.S.C. § 12203 and Section 504 Must Be Dismissed at to All Defendants.**

Similarly, Plaintiff's retaliation claims under the ADA or Rehabilitation Act must be dismissed for failure to plead sufficient facts to make relief plausible and because individuals are not proper defendants. To establish a *prima facie* claim for retaliation under the ADA or the Rehabilitation Act, Plaintiff would have to show that he "engaged in protected conduct," that he was "subjected to an adverse action" by Defendants, and that "there was a causal connection between the protected conduct and the adverse action." *Lebron v. Com. of P.R.*, 770 F.3d 25, 31

---

[3] To the extent that Plaintiff alleges that the Individual Defendants violated the Department of Justice's regulations implementing the ADA, namely, 28 C.F.R. 35.160, such regulations do not provide a separate, direct cause of action to this Court. *See* § 35.170. Accordingly, any such claims must be dismissed. In any event, Plaintiff provides no factual allegations to illuminate how Defendants allegedly violated § 35.160 or why § 35.160 is applicable here. That regulation provides generally that a "public entity shall take appropriate steps to ensure that communications with . . . participants . . . with disabilities are as effective as communications with others" including by requiring the provision of "auxiliary aids" and services. Without any supporting allegations regarding the alleged auxiliary aids at issue, Plaintiff fails to establish the relevance of this regulation to his claims.

(1st Cir. 2014). Plaintiff identifies numerous acts that he alleges are retaliatory but provides insufficient support for each of them.

At the outset, Plaintiff appears to claim generally that any failure to provide certain accommodations is inherently retaliatory; but he provides no basis to plausibly support retaliation in this case. Instead, he solely offers legal conclusions – alleging, for example, that the failure to accommodate must have been "intentional or reckless and intended to inflict emotional damage." ¶ 35. As established supra, with respect to the Individual Defendants, he alleges no facts whatsoever regarding their specific involvement in the denial, much less enough facts to demonstrate that their personal actions were motivated by retaliatory animus.

With respect to his Wills, Trusts & Estates class, Plaintiff offers no support for his conclusory allegation that Professor Raust somehow intended to retaliate against him by—on a single occasion—referring to another attendee as "Michael's guest" and acknowledging Plaintiff when he left the classroom. On the face of the Amended Complaint, it is implausible that Professor Raust had any motivation to retaliate or that these innocuous acts, even if subjectively disappointing, could possibly qualify as a material adverse action.

Nor does Plaintiff provide any support beyond speculative, conclusory allegations that he received a failing grade or was notified by email of his potential disenrollment in retaliation for various complaints, the precise parameters of which are unclear in the Amended Complaint.[4] Rather, the most plausible explanation for these actions is that UNH was engaged in its standard administration of programming with respect to an enrolled student based upon his academic

---

[4] At most, Plaintiff's Amended Complaint reveals that, as a UNH Law student, he received standard communications from Defendants Hinton and Sparrow regarding his academic performance and enrollment. He offers no allegations to plausibly show that such communications were somehow motivated by retaliatory intent, nor could he.

9

performance. That these may have been unfavorable outcomes does not plausibly suggest that they were in any way improper or retaliatory.

Likewise, Plaintiff provides insufficient factual support from which to plausibly infer retaliation based upon the CREO Assistant Director's conduct. Indeed, the exact nature of CREO's alleged response to Plaintiff's complaints and/or the manner in which they allegedly failed to assist him is unclear based upon the allegations in the Amended Complaint. Plaintiff does not allege—nor could he—that CREO took no action to review or address his complaints. To the extent that Plaintiff alleges that CREO determined not to conduct further investigation, he provides no plausible support to conclude that such decision was motivated by retaliation, as opposed to some other legitimate, non-retaliatory reason. Accordingly, all ADA and Section 504 retaliation claims against the Defendants should be dismissed.

As with his discrimination claims, however, Plaintiff's retaliation claims against Individual Defendants should be dismissed for the additional reason that individuals are not appropriate defendants under the ADA or Rehabilitation Act. The District of New Hampshire has regularly dismissed such claims against individuals, recognizing that the ADA and Rehabilitation Act generally do not provide for individual liability in other contexts. *See, e.g.*, *Tveter v. Derry Coop. Sch. Dist.*, No. 16-CV-329-PB, 2017 WL 2062944, *5 (D.N.H. Apr. 25, 2017) (recommending dismissal of Title II and retaliation claims against individual defendants for lack of individual liability under ADA), *report and recommendation adopted sub nom. Tveter v. Derry Coop. Sch. Dist.*, No. 16-CV-329-PB, 2017 WL 2062855 (D.N.H. May 12, 2017); *Gascard v. Franklin Pierce Univ.*, No. 14-CV-220-JL, 2015 WL 1097485, at *6 (D.N.H. Mar. 11, 2015); *see also DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 363 (D. Me. 2012) (finding that adding retaliation claims against individual defendant would be futile for lack of individual

liability, including under Title V of the ADA). Consistent with those decisions, the Court should decline to impose individual liability here and dismiss individual capacity retaliation claims.

> **III.    Plaintiff Alleges No Extreme or Outrageous Conduct to Plausibly State a Claim for Intentional Infliction of Emotional Distress.**

The Court should further reject any attempt to repurpose ADA and Rehabilitation Act claims under the common law. To state a claim for intentional infliction of emotional distress, Plaintiff must allege sufficient facts to show that Defendants (1) acted intentionally or recklessly; (2) that their acts were *extreme and outrageous*; and (3) that their acts caused Plaintiff to suffer severe emotional distress. *Morancy v. Morancy,* 134 N.H. 493, 496 (1991). Defendants will be liable only if their conduct was "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Mikell v. Sch. Admin. Unit No. 33,* 158 N.H. 723, 729 (2009) (quoting Rest.2d Torts § 46). The bar for this standard is so high as to be "formidable." *See Brodeur v., Claremont Sch. Dist., 626 F. Supp. 2d 195,* 224 (2009). Indeed, in *Mikell*, the New Hampshire Supreme Court reaffirmed the formidable standard of "extreme and outrageous conduct" necessary to impose liability:

> [I]t is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice." Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Brodeur v., Claremont Sch. Dist., 626 F. Supp. 2d 195,* 224 (2009) (internal citations and quotations omitted). The allegations complained of here simply do not plausibly rise to that level. At most, Plaintiff disliked and allegedly experienced distress as a result of a single in-class comment made by Professor Raust, which Plaintiff subjectively interpreted as referring to his

disability, and various standard administrative actions taken with respect to his alleged accommodations requests and his academic performance (e.g., denial of certain alleged accommodations requests, issuance of a failing grade, email notifications regarding potential disenrollment and the status of an investigation request). These common-place administrative, academic activities simply cannot be plausibly described as sufficiently outrageous or extreme so as to be "atrocious, and utterly intolerable in a civilized community." Plaintiff's conclusory allegations that these actions were malicious and/or intended to "hurt him" are insufficient to state a claim. Accordingly, all such claims should be dismissed.

### IV. Plaintiff Cannot Establish a Cause of Action under N.H. RSA 354-A.

To the extent that Plaintiff attempts to repurpose the aforementioned claims under the New Hampshire Law Against Discrimination, N.H. RSA 354-A ("LAD"), any such claims should be dismissed for lack of jurisdiction. This Court lacks jurisdiction under RSA-354-A because LAD does not establish a direct cause of action to the District Court for the District of New Hampshire. *See* RSA 354-A:21. Plaintiff does not allege—nor could he—that he has satisfied the mandatory preconditions to suit under the Act. *See id.* Accordingly, any/all LAD claims must be dismissed.

### CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss should be granted and Plaintiff's Amended Complaint dismissed in full with prejudice.

[Signature Next Page]

Respectfully submitted,

DEFENDANTS

UNIVERSITY OF NEW HAMPSHIRE, LAUREN BERGER, SHANE COOPER, NELSON RAUST, BRAD HINTON, SOPHIE SPARROW, EMILY WILCOX, MEGAN CARPENTER, and REBECCA PURDOM,

By Their Attorneys,

*/s/ Jeffrey T. Collins*
Jeffrey T. Collins (NH Bar No. 11260)
Gregory Manousos, *pro hac vice*
Rachel Shapiro, *pro hac vice*
**MORGAN, BROWN & JOY, LLP**
200 State Street, Suite 11A
Boston, MA 02109
T: (617) 523-6666
E: jcollins@morganbrown.com
E: gmanousos@morganbrown.com
E: rshapiro@morganbrown.com

Date: Sept. 22, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on September 22, 2023, this document filed through the ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF) and, per written agreement of the Parties, copies shall be sent via email to Michael Melendez at Michael.Melendez@law.unh.edu.

*/s/ Jeffrey T. Collins*
Jeffrey T. Collins