UNITED STATES DISTRICT COURT
DISTRICT OF NEW HAMPSHIRE

| MICHAEL MELENDEZ, | |
|---|---|
| Plaintiff (Pro Se), | |
| v. | Case Number: 2023-cv-00172-SM |
| UNIVERSITY OF NEW HAMPSHIRE, in its official and individual capacity, LAUREN BERGER, in her official and individual capacity, SHANE COOPER, in his official and individual capacity, NELSON RAUST, in his official and individual capacity, | |
| Defendants. | |

## DEFENDANTS' OPPOSITION TO PLAINTIFF'S
## MOTION FOR LEAVE TO AMEND HIS COMPLAINT

Defendants hereby submit this Opposition to Plaintiff Michael Melendez's Motion for Leave to Amend Complaint. Dkt. 28 ("Motion") to file a Third Amended Complaint ("Third Amended Complaint"). As set forth more fully herein, Plaintiff's Motion should be denied because it is entirely futile and because it would unduly prejudice Defendants.

Initially, and as discussed below, Plaintiff's Proposed Third Amended Complaint does not alter the fact that his intentional infliction of emotional distress claim, disability discrimination, and retaliation claim are still subject to dismissal for the reasons set forth in Defendants' Motion to Dismiss the Amended Complaint filed on June 22, 2023. Dkt. 19-20. Plaintiff has alleged no additional material facts nor meaningfully developed his arguments for these claims. Specifically, Plaintiff's claims, as alleged in both his original and proposed Third Amended Complaint, fail to

establish basic requirements of each claim's *prima facie* case.

To the extent that Plaintiff is introducing new claims of defamation, conspiracy, violation of 14th Amendment, and discrimination based on race, such claims must also fail. As all of Plaintiff's claims contain critical defects and fail to state a claim upon which relief could be granted, his motion to amend must be denied.[1]

Finally, Defendants would be unduly prejudiced if the Court were to grant Plaintiff's Motion to Amend because doing so would unnecessarily waste the resources of Defendant and this Court. Accordingly, Plaintiff's Motion to Amend should be denied in its entirety because it is futile and would unduly prejudice Defendant.

## I. RELEVANT PROCEDURAL BACKGROUND

*Pro se* Plaintiff, Michael Melendez, filed the original Complaint on March 3, 2023. Dkt. 1. In his Complaint, Plaintiff alleges that he was discriminated against because he did not receive certain disability accommodations and that he was subjected to retaliation by different faculty members and administrators at the University of New Hampshire ("UNH" or the "University") while he was a law student there. In his initial Complaint, Plaintiff named four defendants. Defendants moved to partially dismiss the original Complaint on June 16, 2023. Dkt. 6-7. Plaintiff then filed the First Amended Complaint on July 19, 2023, in which he named a total of nine defendants. Dkt. 13 ("First Amended Complaint). The First Amended Complaint was 12 pages long with 106 paragraphs and asserted six claims. Defendant moved to dismiss the First Amended Complaint on September 22, 2023. Dkt. 19-20.

On September 27, 2023, Plaintiff emailed Defendants' Attorney, Gregory Manousos, attaching the intended Second Amended Complaint and the motion for leave to amend was filed

---

[1] Should the Court grant the Motion to Amend, Defendants reserve the right to renew their Motion to Dismiss, to the extent appropriate.

on October 06, 2023. Dkt. 24. The Second Amended Complaint included 21 named Defendants. The complaint was 322 pages and included 2,948 paragraphs with an unwarranted 392 claims, many of which failed to recite any legally cognizable cause of action.

Due to the nature of the Second Amended Complaint, Defendants filed a motion to Schedule a Status Conference on October 05, 2023. Dkt. 22. On October 31, Defendants' Attorney, Gregory Manousos and the Plaintiff met with the Judge to discuss the Second Amended Complaint.

On October 31, 2023, Plaintiff motion for leave to amend was denied, but Plaintiff was granted leave to file a renewed motion to amend. Plaintiff's latest motion for leave to amend the complaint was filed on November 29, 2023. Dkt. 28

## II.     RELEVANT FACTUAL BACKGROUND

Plaintiff Michael Melendez enrolled as a law student at the University of New Hampshire Franklin Pierce School of Law ("UNH Law") in or around August 2020.[2] Dkt. 28 (Third Amended Complaint) ¶ 26.

*Disability Accommodation*

Plaintiff was allegedly diagnosed with combat related post-traumatic stress disorder (PTSD); insomnia; paranoia; major depressive disorder; and attention deficit hyperactivity disorder (ADHD). Id. at ¶ 23. Beginning in or around August 2022 (and allegedly continuing through June 2023), Plaintiff alleges that he was excluded from certain UNH programs or benefits as a result of his disabilities. Id. at ¶ 57. At some unidentified time, Plaintiff alleges that he made certain requests, though the parameters of such requests are not identified. Plaintiff claims that Defendants ultimately did not provide him with certain desired accommodations, including, for

---

[2] Plaintiff's allegations are taken as true for purposes of this Opposition for Leave to Amend only.

example, permitting remote attendance, as well as "an advisor; centralized assistance with understanding the syllabus and other course requirements; and centralized assistance with understanding the instructions of specific assignments." Id. at ¶ 60; 62; 68.

*Wills, Trust & Estates Class*

While enrolled at UNH Law, Plaintiff was a student in a Wills, Trusts, and Estates course taught by Professor Nelson Raust. Id. at ¶ 115. While conducting class on or about October 5, 2022, Professor Raust directed a question to another attendee, who he identified as Plaintiff's "guest," and invited them to answer. Id. at ¶ 115; 122. Plaintiff claims that by inviting this individual to participate in class and referring to them as Plaintiff's "guest," Professor Raust "highlight[ed] Plaintiff's need for assistance." Id. at ¶ 130. Plaintiff claims that this question caused him such offense and humiliation that he was "severely emotionally damaged by the public mockery and medically required to depart the lecture." Id. at ¶ 125. Professor Raust then allegedly acknowledged Plaintiff's departure by saying "goodbye" to him. Id. at ¶126. Complainant alleged that Professor Raust's acknowledgement of his departure "discriminated against and humiliated" him. Id. at ¶128.

*Plaintiff's Internal Complaints*

In November 2022, Plaintiff alleges that he filed a discrimination complaint with the University's Civil Rights and Equity Office ("CREO"). Id ¶ 154. As best as can be determined, Plaintiff appears to assert that CREO Assistant Director Emily Wilcox did not assist him with his complaint and found "no indication of discrimination or need to investigate" the claims. Id. at ¶ 199-200; 205.

*Plaintiff's Academic Performance*

During the Fall 2022 school year, Plaintiff received five (5) failing grades out of the six

courses he was taking. Id. at ¶157; 165. Plaintiff was later disenrolled from UNH Law under their "Academic Standing and Review" Policy. Id.at ¶ 316. Plaintiff concludes that all of the aforementioned alleged conduct caused Plaintiff to suffer "undue burden; aggravation of disability symptoms; financial loss; loss of reputation; humiliation; mental suffering; emotional distress; being wrongfully dismissed from the law school; and a significantly documented, permanent increase in disability rating." Id. at ¶86.

## III. ARGUMENT

### A. Legal Standard

The Federal Rules of Civil Procedure 15(a) explains that "[l]eave to amend is 'freely given when justice so requires.'" *Edlow v. RBW, LLC*, 688 F.3d 26, 39 (1st Cir.2012) (quoting Fed.R.Civ.P. 15(a)). However, "... courts have discretion to deny such motions under appropriate circumstances, including undue delay and futility." Id. (citing *Palmer v. Champion Mortg.*, 465 F.3d 24,30 (1st Cir. 2006). Denial is also appropriate when the amendments to the complaint "fail to state a claim under the standard used for Federal Rule of Civil Procedure 12(b)(6)." *Lemay v. New Hampshire Dept. of Safety*, 2012 WL 5928513, 1 (D.N.H. 2012) (*citing Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 132 (1st Cir. 2006)). As such, the amended complaint must include "enough facts to state a claim to relief that is plausible on its face." Id. (*quoting Sanchez v. United States,* 671 F.3d 86, 107 (1st. Cir.2012)).

### B. Plaintiff's Motion To Amend Is Futile Because His Discrimination Claims under the ADA Are Subject to Dismissal

Plaintiff's discrimination claims under Title II of the ADA, 42 U.S.C. § 12132 ("Title II") are subject to dismissal against all Defendants because Plaintiff fails to plead sufficient facts to make relief plausible, and even if he had, his claims against all individual Defendants must be dismissed because the statute does not provide for individual liability. To state a plausible claim

under the ADA, a plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker v. Universidad de P.R.*, 225 F.3d 1, 5 (1st Cir. 2000). In other words, Plaintiff must plausibly establish that Defendants engaged in some wrongful action *because of* the Plaintiff's disability. *Lebron v. Com. of P.R.*, 770 F.3d 25, 31 (1st Cir. 2014). Where, as here, Plaintiff claims that he was excluded from participation as a UNH Law student because the University failed to accommodate him, he must plead sufficient facts to demonstrate that UNH's decisions with respect to his accommodation requests were irrational and not motivated by any conceivable legitimate reason. *Toledo v. Sanchez*, 454 F.3d 24, 33 (1st Cir. 2006).

Plaintiff fails to meet this standard. As an initial matter, Plaintiff does not clearly allege that he actually requested the alleged accommodations and received a denial. He provides no allegations whatsoever to describe or identify his alleged disability, much less evidence to plausibly demonstrate that the alleged accommodations would have been effective or that they were denied without any conceivable legitimate basis. Instead, he appears to summarily conclude that not providing a particular accommodation is inherently wrongful and discriminatory. This fails to meet the plausibility standard. *Cf. Lebron v. Com. of P.R.*, 770 F.3d 25, 31 (1st Cir. 2014) ("Simply alleging in a conclusory fashion that the defendants engaged in 'intentional discrimination,' as does the complaint here, is not enough to satisfy the pleading standard."). Similarly, Plaintiff provides no allegations whatsoever regarding the specific Individual Defendants to explain how, if at all, they were personally involved in or responsible for any alleged

denial of an accommodation. Nor does he put forth any allegations establishing a discriminatory motive to do so. Accordingly, claims against all Defendants are subject to dismissal.

But even if he had plausibly alleged sufficient facts to state an ADA discrimination claim against UNH, he has failed to do so as to the Individual Defendants. All individual defendants should be dismissed for the additional reason that—consistent with the majority of Circuit Courts to consider the issue—individuals may not be held personally liable under the ADA. The ADA provides "'no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.'" *Nunes v. Mass. Dep't of Corr.*, 766 F.3d 136, 144 (1st Cir. 2014) (citing 42 U.S.C. § 12132; 29 U.S.C. § 794(a)). To state a plausible claim under the ADA, Plaintiff must allege: "(1) that he is a qualified individual with a disability; (2) that he was either excluded from participation in or denied the benefits of some public entity's services, programs, or activities or was otherwise discriminated against; and (3) that such exclusion, denial of benefits, or discrimination was by reason of the plaintiff's disability." *Parker v. Universidad de P.R.*, 225 F.3d 1, 5 (1st Cir. 2000); *Gray v. Hanks*, No. 20-CV-152-PB, 2021 WL 2593613, at *3 (D.N.H. June 8, 2021), *report and recommendation adopted sub nom. Gray v. NH Dep't of Corr.*, No. 20-CV-152-PB, 2021 WL 2592171 (D.N.H. June 23, 2021).

The ADA does not provide a cause of action for discrimination against individuals in their personal capacities. Rather, Title II prohibits discrimination by a "public entity," defined as any state or local government, department, agency, or other instrumentality, 42 U.S.C. § 12131(1). Because an individual is not a "public entity" the District of New Hampshire has consistently held that individuals may not be sued in their personal capacities under the ADA. *See, e.g., Gray*, 2021 WL 2593613, at *4 (citing *Alsbrook v. City of Maumelle*, 184 F.3d 999, 1005 n.8 (8th Cir. 1999)

(finding no individual liability under Title II)); *Tveter v. Derry Cooperative School District SAU #10,* 16-cv-329-PB, 2018 WL 3520827, at *5 (D.N.H. July 20, 2018) (dismissing Title II and Section 502 claims, holding that "neither the ADA nor the Rehabilitation Act permit individual capacity actions"); *Kiman v. N.H. Dept. of Corrections*, 01-cv-134-JD, 2007 WL 2247843, at *8 (D.N.H. Aug. 1, 2007) (joining five circuits to determine that the ADA does not permit individual liability and reasoning that "public entity" under Title II plainly refers to "collective units, not individuals"); *Abbott v. Town of Salem,* No. 05-CV-127-SM, 2006 WL 276704, *4 (D.N.H. Feb. 2, 2006) (dismissing as impermissible individual capacity claims under Title II and Section 504).[3]

Numerous Circuit Courts to consider the issue agree that Title II does not permit individuals to be sued in their personal capacities for alleged discrimination. *See, e.g.*, *Garcia v. State Univ. of N.Y. Health Scis. Ctr.*, 280 F.3d 98, 107 (2d Cir. 2001) (no individual liability under Title II), *Alsbrook*, 184 F.3d at 1005 n. 8 (same). Although the First Circuit has not ruled on this issue, it has joined other Circuits in the "virtually universal view" that Title II of the ADA does not provide for individual liability. *Roman–Oliveras v. P.R. Elec. Power Auth.,* 655 F.3d 43, 52 (1st Cir. 2011).

### C. Plaintiff's Motion To Amend Is Futile Because His Intentional Infliction of Emotional Distress Claim Is Subject To Dismissal

The Court should further reject any attempt to repurpose ADA claims under the common law. To state a claim for intentional infliction of emotional distress, Plaintiff must allege sufficient facts to show that Defendants (1) acted intentionally or recklessly; (2) that their acts were extreme

---

[3] To the extent that Plaintiff alleges that the Individual Defendants violated the Department of Justice's regulations implementing the ADA, namely, 28 C.F.R. 35.160, such regulations do not provide a separate, direct cause of action in this Court. *See* § 35.170. Accordingly, any such claims must be dismissed. In any event, Plaintiff provides no factual allegations to illuminate how Defendants allegedly violated § 35.160 or why § 35.160 is applicable here. That regulation provides generally that a "public entity shall take appropriate steps to ensure that communications with . . . participants . . . with disabilities are as effective as communications with others" including by requiring the provision of "auxiliary aids" and services. Without any supporting allegations regarding the alleged auxiliary aids at issue, Plaintiff fails to establish the relevance of this regulation to his claims.

and outrageous; and (3) that their acts caused Plaintiff to suffer severe emotional distress. *Morancy v. Morancy*, 134 N.H. 493, 496 (1991). Defendants will be liable only if their conduct was "outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Mikell v. Sch. Admin*. Unit No. 33, 158 N.H. 723, 729 (2009) (*quoting* Rest.2d Torts § 46). The bar for this standard is so high as to be "formidable." *See Brodeur v., Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 224 (2009). Indeed, in *Mikell,* the New Hampshire Supreme Court reaffirmed the formidable standard of "extreme and outrageous conduct" necessary to impose liability:

> [I]t is not enough that a person has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice." Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.

*Brodeur v., Claremont Sch. Dist.*, 626 F. Supp. 2d 195, 224 (2009) (internal citations and quotations omitted). The allegations complained of here simply do not plausibly rise to that level.

At most, Plaintiff disliked and allegedly experienced distress as a result of a single in-class comment made by Professor Raust, which Plaintiff subjectively interpreted as referring to his disability, and various routine administrative actions taken with respect to his alleged accommodations requests and his academic performance (e.g., denial of certain alleged accommodations requests, issuance of a failing grade, email notifications regarding potential disenrollment and the status of an investigation request). These commonplace administrative, academic activities simply cannot be plausibly described as sufficiently outrageous or extreme so as to be "atrocious, and utterly intolerable in a civilized community." Plaintiff's conclusory allegations that these actions were malicious and/or intended to "hurt him" are insufficient to state a claim. Accordingly, all such claims should be dismissed.

### D. Plaintiff's Motion To Amend Is Futile Because His Defamation Claim Is Subject To Dismissal

To prove defamation, Plaintiff must show that (1) Defendants made a false statement of fact; (2) the statement was published or distributed to a public audience; and (3) the statement caused the plaintiff material harm. NH Rev Stat § 644:11 (2022). Plaintiff fails to allege facts sufficient to satisfy the above-enumerated requirements and to allow relief under a claim of defamation. The proposed Third Amended Complaint makes the vague and conclusory allegation that a Defendant "recklessly distributed false statements regarding the severity of Plaintiff Melendez's disability, violating Defamation of Character under NH Common Law." Third Amended Complaint ¶88. However, Plaintiff fails to identify with appropriate particularity any defamatory comments, writings, or other statements. Similarly, the proposed Third Amended Complaint does not describe any material harm that the Plaintiff suffered due to false statements allegedly made by any Defendant or explain how and to whom the statements were communicated. Instead, the Complaint simply asserts in conclusory fashion that "Plaintiff was perceived negatively by other staff and administrators, and as a result, suffered adverse treatment (i.e. lack of accommodations; failing grades; isolation)." Id. at ¶ 93. The specious and circular allegations made by the Plaintiff are far from sufficient to state a claim of defamation upon which relief may be granted.

### E. Plaintiff's Motion to Amend Is Futile Because His False Light Claim Is Subject To Dismissal

Complainant also raises the concept of "false light." The tort of False Light invasion of privacy has not been codified in any state or federal law applicable to New Hampshire. Additionally, although some jurisdictions have accepted false light as a common law claim, the New Hampshire Supreme Court has never affirmatively accepted a claim for false light. *Howard*

*v. Antilla*, 294 F.3d 244, 248 (1st Cir. 2002). However, if the Court were to recognize a common law cause of action for false light, the plaintiff must then demonstrate (1) Defendant gave publicity to a matter concerning another that places the other before the public in a false light, (2) the false light in which the other was placed would be highly offensive to a reasonable person, and (3) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. Id. at 248.

Plaintiff has failed to meet any of these elements. Plaintiff has not identified any specific false statements made by Defendants, has not described any way in which Defendants placed these statements before the public, and the Third Amended Complaint falls far short of describing any statement that could be considered "highly offensive to a reasonable person." Plaintiff merely recites statements such as "Can Michael's guest answer the question" and "The content is based on your reflection and thoughts about your academic performance and what steps you can and will take to improve it." Third Amended Complaint ¶ 122; 241. These statements are objectively inoffensive, and neither statement comes close to the standard required to show a "false light" violation, even if such cause of action were to be recognized by the Court.

## F. Plaintiff's Motion To Amend Is Futile Because His Race Discrimination Claim Is Subject To Dismissal

Plaintiff appears to allege discrimination on the basis of race (Hispanic) in violation of 42 U.S.C. 1981. Section 1981 provides equal rights to make and enforce contracts. It is unclear to what contract Plaintiff is referring. Assuming that Plaintiff intended to raise a Title VI race discrimination claim, he "'must demonstrate, inter alia, that the defendant discriminated on the basis of race, the discrimination was intentional, and the discrimination was a substantial or

motivating factor for the defendant's actions.'" *Brady v. Weeks Medical Center,* 2019 WL 6529870,3 (D.N.H., 2019) (*quoting. Goodman v. Bowdoin Coll.*, 380 F.3d 33, 43 (1st Cir. 2004)).

While Plaintiff is a member of a protected class, he has failed to meaningfully allege any of the remaining required elements of a race discrimination claim. Plaintiff has not identified any way in which he was discriminated against, and has failed to identify any plausible connection between any alleged negative actions taken against him and his racial or ethnic identity. Instead, Plaintiff has again only offered legal conclusions devoid of any factual basis for their determination. For example, Plaintiff claims "Defendants Dean, Carpenter and Cooper wrongful withholding of advocacy, specified in Claim 27 (¶366-374) was motivated by race, violating 42 U.S.C. 1981," and that "Defendants' actions don't occur without race being a motivating factor" while providing no basis for these conclusions. Plaintiff's claim of race discrimination must fail for the above-discussed reasons.

### G. Plaintiff's Conspiracy Claim Is Futile and Subject To Dismissal

To succeed in a claim of conspiracy, Plaintiff must demonstrate that (1) Defendant, with the purpose statutorily required for a crime to be committed, agrees with one or more persons to commit or cause the commission of such crime, and (2) an overt act is committed by one of the conspirators in furtherance of the conspiracy. NH RSA 629:3 (1996 through Reg Sess).

While Plaintiff seems to allege that Defendants conspired to commit intentional infliction of emotional distress, the proposed Third Amended Complaint fails to identify any actions or occurrences which could plausibly be construed as an agreement to commit such an offense. Plaintiff also fails to identify any overt actions committed by an alleged conspirator in furtherance of the conspiracy. Instead, Plaintiff merely asserts legal conclusions, such as his allegation that "Defendants utilized their respective authority to intentionally ensure Plaintiff Melendez would

fail the semester and experience emotional harm, violating IIED under NH Common Law," without any cogent legal or factual support. Having failed to satisfy either of the elements required by the cause of action, Plaintiff's claim of Conspiracy must fail.

### H. Plaintiff's Motion To Amend Is Futile Because His Retaliation Claim Is Subject To Dismissal

Plaintiff's claim of retaliation, even as set forth in the third proposed amended Complaint, still fail to plead sufficient facts to make relief plausible and individuals are not proper defendants. To establish a prima facie claim for retaliation under the ADA, Plaintiff would have to show that he "engaged in protected conduct," that he was "subjected to an adverse action" by Defendants, and that "there was a causal connection between the protected conduct and the adverse action." *Lebron v. Com. of P.R.*, 770 F.3d 25, 31 (1st Cir. 2014). Plaintiff identifies numerous acts that he alleges are retaliatory but provides insufficient support for each of them.

At the outset, Plaintiff appears to claim generally that any failure to provide certain accommodations is inherently retaliatory; but he provides no basis to plausibly support retaliation in this case. Instead, he solely offers legal conclusions – alleging, for example, that the failure to accommodate caused him to be "unnecessarily exposed to public, recklessly inflicting emotional Damage." Third Amended Complaint ¶ 83. As established supra, with respect to the Individual Defendants, he alleges no facts whatsoever regarding their specific involvement in the denial, much less enough facts to demonstrate that their personal actions were motivated by retaliatory animus.

With respect to his Wills, Trusts & Estates class, Plaintiff offers no support for his conclusory allegation that Professor Raust somehow intended to retaliate against him by—on a single occasion—referring to another attendee as "Michael's guest" and acknowledging Plaintiff when he left the classroom. On the face of the Amended Complaint, it is implausible that Professor

Raust had any motivation to retaliate or that these innocuous acts, even if subjectively disappointing, could possibly qualify as a material adverse action.

Nor does Plaintiff provide any support beyond speculative, conclusory allegations that he received a failing grade or was notified by email of his potential disenrollment in retaliation for various complaints, the precise parameters of which are unclear in the Amended Complaint. Rather, the most plausible explanation for these actions is that UNH was engaged in its standard administration of programming with respect to an enrolled student based upon his academic performance. That these may have been unfavorable outcomes does not plausibly suggest that they were in any way improper or retaliatory.

Likewise, Plaintiff provides insufficient factual support from which to plausibly infer retaliation based upon the CREO Assistant Director's conduct. Indeed, the exact nature of CREO's alleged response to Plaintiff's complaints and/or the manner in which they allegedly failed to assist him is unclear based upon the allegations in the Third Amended Complaint. Plaintiff does not allege—nor could he—that CREO took no action to review or address his complaints. To the extent that Plaintiff alleges that CREO determined not to conduct further investigation, he provides no plausible support to conclude that such decision was motivated by retaliation, as opposed to some other legitimate, non-retaliatory reason. Accordingly, all ADA and Section 504 retaliation claims against the Defendants should be dismissed.

As with his discrimination claims, however, Plaintiff's retaliation claims against Individual Defendants should be dismissed for the additional reason that individuals are not appropriate defendants under the ADA The District of New Hampshire has regularly dismissed such claims against individuals, recognizing that the ADA generally does not provide for individual liability in other contexts. *See*, e.g., *Tveter v. Derry Coop. Sch. Dist.*, No. 16-CV-329-PB, 2017 WL

2062944, *5 (D.N.H. Apr. 25, 2017) (recommending dismissal of Title II and retaliation claims against individual defendants for lack of individual liability under ADA), report and recommendation adopted sub nom. *Tveter v. Derry Coop. Sch. Dist.*, No. 16-CV-329-PB, 2017 WL 2062855 (D.N.H. May 12, 2017); *Gascard v. Franklin Pierce Univ.*, No. 14-CV-220-JL, 2015 WL 1097485, at *6 (D.N.H. Mar. 11, 2015); *see also DeCotiis v. Whittemore*, 842 F. Supp. 2d 354, 363 (D. Me. 2012) (finding that adding retaliation claims against individual defendant would be futile for lack of individual liability, including under Title V of the ADA). Consistent with those decisions, the Court should decline to impose individual liability here and dismiss individual capacity retaliation claims.

### I. Plaintiff's Motion to Amend Is Futile Because His Due Process/ Property Interest Claim Is Subject To Dismissal

It is not in dispute that students possess a legitimate property interest to a public education that is protected by the Due Process clause. *Haidak v. Univ. of Massachusetts-Amherst*, 933 F.3d 56, 65 (1st Cir. 2019). However, this interest is not absolute; students are protected from being denied a public education on the basis of misconduct without the "minimum procedures required by [the Due Process] Clause." Id. While students have a strong interest in "completing their education, as well as avoiding unfair or mistaken exclusion from the educational environment, and the accompanying stigma," state universities have a similarly important interest in "promot[ing] and protect[ing] the primary function of institutions that exist to provide education." Id. at 66. To determine what process is constitutionally required, the First Circuit has outlined the following three-factor balancing test: "First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the

Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." Id.

While it is undeniable that Plaintiff's interest in completing his education is significant, it is outweighed by the remaining two factors identified by the First Circuit. First, Plaintiff has asserted no facts that indicate that he was wrongfully deprived of any protected interest, and a more robust process would be unlikely to alter the end result. By his own admission, Plaintiff was unable to satisfactorily complete five out of the six courses in which he was enrolled. In responding to these unacceptable outcomes, Defendant UNH Law acted neither arbitrarily nor capriciously. Neither was this a disciplinary action which may "require[] 'some kind of hearing.'" Id. (*quoting Goss v. Lopez*, 419 U.S. 565, 579 (1975)). Defendant acted in a manner consistent with their policy and appropriate in the context of Plaintiff's conduct. The Third Amended Complaint is devoid of any facts or assertions that would necessarily alter the final outcome of disenrollment. Accordingly, any loss of property interest is very unlikely to be erroneous. Finally, UNH Law School has a pronounced and important interest in ensuring that its students are able to satisfactorily complete required coursework and demonstrate legal acumen commensurate with a juris doctor degree. Disenrollment is a proper response to Plaintiff's apparent inability to complete relevant coursework.

Since Plaintiff has failed to introduce any evidence that would state a "false light" claim, this claim would be futile and should be dismissed.

### J. Should Plaintiff Attempt to Establish a Cause of Action under N.H. RSA 354-A He is Unable to Do So

To the extent that Plaintiff attempts to repurpose the aforementioned claims under the New Hampshire Law Against Discrimination, N.H. RSA 354-A ("LAD"), any such claims should be dismissed for lack of jurisdiction. This Court lacks jurisdiction under RSA-354-A because LAD

does not establish a direct cause of action to the District Court for the District of New Hampshire. See RSA 354-A:21. Plaintiff does not allege—nor could he—that he has satisfied the mandatory preconditions to suit under the Act. See Id. Accordingly, any/all LAD claims are subject to dismissal.

### K. Defendants Would Be Unduly Prejudiced If Plaintiff's Motion To Amend Is Granted

If this Court were to grant the Motion to Amend, Defendants would be forced to file a new motion seeking dismissal of Plaintiff's claims for many of the same reasons already before the Court. Granting the Motion to Amend would only result in a waste of Defendant's and the Court's resources and an unnecessary delay in the adjudication of Plaintiff's claims. This is particularly true considering the overwhelmingly voluminous nature of Plaintiff's fillings.

The prejudice to Defendants is particularly unwarranted to the extent that Plaintiff's proposed amendment seeks to add a gratuitous number of new, and only tangentially related, defendants with no explanation as to why they were not included in the original Complaint in this action.

Plaintiff seeks to include an additional 17 Defendants to this claim. The named defendants now include virtually anyone and everyone who Plaintiff has encountered or communicated with at UNH, including the President of the University and the law firm representing Defendants and one of its attorneys, Rachel Shapiro (who has since left the firm). None of the encounters or communications cited by Plaintiff, on their face, forms the basis of any legally cognizable claim. Since Plaintiff has failed to state a claim upon which relief could be granted against any of these Defendants, all claims against these Defendants should be dismissed.

Accordingly, this Court should deny the Motion to Amend, and the case should be

dismissed in its entirety for failure to state a claim upon which relief could be granted.

## IV. CONCLUSION

For the reasons set forth above, Defendant respectfully requests that Plaintiff's Third Motion to Amend be denied and Plaintiff's case be dismissed in its entirety.

        Respectfully submitted,

        DEFENDANTS UNIVERSITY OF NEW HAMPSHIRE, LAUREN BERGER, SHANE COOPER, and NELSON RAUST,
        By Their Attorneys,

        */s/ Gregory Manousos*
        Gregory Manousos, *pro hac vice*
        Jeffrey T. Collins (NH Bar No. 11260)
        **MORGAN, BROWN & JOY, LLP**
        200 State Street, Suite 11A
        Boston, MA 02109
        T: (617) 523-6666
        E: jcollins@morganbrown.com
        E: gmanousos@morganbrown.com

Date: December 12, 2023