**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE**

<u>Michael Melendez</u>

       v.                                     Civil No. 23-cv-00172-SM-TSM

<u>University of New Hampshire, et al.</u>

**REPORT AND RECOMMENDATION ON PLAINTIFF'S
<u>MOTION FOR LEAVE TO SUPPLEMENT COMPLAINT</u>**

      Michael Melendez ("Melendez"), who proceeds pro se, was enrolled as a student at the University of New Hampshire's Franklin Pierce Law School ("UNH Law") from August 2020 to September 2023, when he was disenrolled from the program. On March 3, 2023, Melendez filed this action against the University of New Hampshire ("UNH") and three of its employees, asserting claims for violations of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, and the Fourteenth Amendment to the Constitution. Melendez has since amended his complaint three times, each time adding new defendants and new claims. In his Fourth Amended Complaint, which is the operative complaint, Melendez names twenty-one separate defendants and asserts eighteen causes of action. Now, Melendez moves for leave to supplement his complaint (Doc. No. 42) and seeks to add another two defendants, including an unnamed individual who works in the information technology ("IT") department at UNH, and Attorney Gregory Manousos, defendants' lead litigation counsel in this case, and to assert four additional causes of action. Defendants, who moved to dismiss each iteration of Melendez's complaint, oppose the instant motion on the grounds that the supplemental claims are futile and would cause Defendants undue prejudice, and because Melendez failed to comply with Local Rule 7.1(c) before filing his motion. For all the reasons detailed below, this court concludes that

Melendez's proposed claims are futile and would cause undue prejudice to defendants. Therefore, this court recommends that Melendez's motion to supplement be DENIED.

## FACTUAL AND PROCEDURAL BACKGROUND

Where, as here, a motion to supplement a complaint is opposed on the basis of futility, the proposed supplement "is gauged by reference to the liberal criteria of Rule 12(b)(6)[.]" Gascard v. Franklin Pierce Univ., No. 14-cv-220-JL, 2015 WL 1097485, at *8 (D.N.H. Mar. 11, 2015) (quotations and citation omitted). Accordingly, the court must "accept as true all well-pleaded facts set forth in the [proposed] complaint and draw all reasonable inferences therefrom in the [plaintiff's] favor." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (quoting Artuso v. Vertex Pharm., Inc., 637 F.3d 1, 5 (1st Cir. 2011)). The court "may augment these facts and inferences with data points gleaned from documents incorporated by reference into the complaint, matters of public record, and facts susceptible to judicial notice." Id. Because the plaintiff is proceeding pro se, the court must construe his allegations liberally. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (documents filed pro se must "be liberally construed" (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)). However, the court will "not credit 'bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like.'" Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005) (quoting Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996)). Applying this standard to the instant case, the relevant facts are as follows.[1]

---

[1] The facts are derived from Melendez's proposed Fifth Amended Complaint ("Fifth Complaint") (Doc. No. 42-2). Additionally, this court considered the exhibits attached to Plaintiff's Motion for Leave to Supplement Complaint (Doc. No. 42-3) ("Pl. Ex. __"), Defendants' Opposition to Plaintiff's Motion for Leave to Supplement the Complaint (Doc. No. 45) ("Def. Ex.__"), and Plaintiff's Reply to Defendant's Objection to Plaintiff's Supplemental Complaint (Doc. No. 46-6) ("Pl. Supp. Ex. __") to the extent Melendez's factual allegations are based on those exhibits. See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) ("When . . . a complaint's factual allegations are expressly linked to - and admittedly dependent upon - a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and

### *Relevant Procedural History*

Melendez filed his initial complaint in this action on March 3, 2023.  Doc. No. 1.  Therein, Melendez named UNH and three individuals as defendants and asserted six claims.  Id.  Defendants filed a partial motion to dismiss on June 16, 2023.  Doc. No. 6.  Seven days later, on June 23, 2023, Melendez filed an assented-to motion to amend his complaint.  Doc. No. 13.  The court allowed plaintiff's motion to amend and denied defendants' motion to dismiss without prejudice.  In his First Amended Complaint, Melendez named UNH and eight individual defendants and asserted six different causes of action, including claims for violations of the ADA, claims for violations of the Rehabilitation Act and claims for intentional infliction of emotional distress ("IIED").  Doc. No. 15.

On September 22, 2023, defendants filed a motion to dismiss the First Amended Complaint.  Doc. No. 19.  Instead of filing an opposition to defendants' motion, Melendez filed another motion for leave to amend his complaint.  Doc. No. 24.  On October 31, 2023, the court denied plaintiff's motion for leave to amend the complaint without prejudice on the grounds that the proposed complaint was excessively long and unnecessarily redundant, and gave Melendez until November 30, 2023, to file a renewed motion to amend his complaint.

On November 29, 2023, plaintiff filed a third motion for leave to amend his complaint. Doc. No. 28.  Defendants opposed the motion on the grounds that the proposed amendments were futile and defendants would suffer undue prejudice if the court were to grant it.  Doc. No. 29.  On December 14, 2023, the court determined that defendants' objections should be addressed in the context of a motion to dismiss pursuant to Fed. R. Civ. P. 12, after both parties had a more complete

---

the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6).").  To the extent the exhibits contain facts that are outside the Fifth Complaint and may not otherwise be considered under Rule 12(b)(6), this court has not considered them.

opportunity to develop their arguments for or against the dismissal of the complaint. Therefore, it granted Melendez's motion to amend the complaint and denied defendants' pending motion to dismiss without prejudice. In his Third Amended Complaint, Melendez named UNH, nineteen individuals, and defense counsel's law firm, Morgan, Brown and Joy, LLP ("Morgan, Brown"), as defendants in the case, and alleged twenty-eight causes of action, including claims for ADA violations, defamation, racial discrimination under 42 U.S.C. § 1981, conspiracy, due process violations and casting the plaintiff in a false light. Doc. No. 30.

Defendants moved to dismiss, with prejudice, the Third Amended Complaint in its entirety. Doc. No. 32. On January 10, 2024, Melendez opposed defendants' motion to dismiss. Doc. No. 35. At the same time, Melendez filed another motion for leave to amend his complaint and file a Fourth Amended Complaint wherein he proposed to remove certain claims and amend his false light claims "to address deficiencies" discussed by defendants in their pending motion to dismiss. See Doc. No. 36-1. Defendants did not oppose the motion, but they reserved their right to refile their motion to dismiss after the Fourth Amended Complaint was filed.

Given defendants' position, the court allowed Melendez's motion for leave to amend his complaint and denied the pending motion to dismiss without prejudice. However, the court expressly cautioned plaintiff as follows:

> this case has been pending since March 3, 2023 and . . . "protracted delay, with its attendant burdens on the opponent and the court, is itself a sufficient reason for the court to withhold permission to amend." Steir v. Girl Scouts of the USA, 383 F.3d 7, 12 (1st Cir. 2004). Consequently, any further motions to amend will be viewed with greater scrutiny.

In his Fourth Amended Complaint, which is the operative complaint in this action, Melendez continues to name UNH, Morgan, Brown and nineteen individuals as defendants, and to maintain eighteen separate claims for relief. See Doc. No. 38.

On February 2, 2024, defendants filed a motion to dismiss the Fourth Amended Complaint in its entirety and with prejudice.  Doc. No. 39.  Melendez filed an opposition to that motion on February 16, 2024.  Doc. No. 41.  On March 18, 2023, while the motion to dismiss remained pending, Melendez filed the instant motion for leave to supplement his complaint, which defendants oppose.

### *Melendez's Alleged Disabilities*

This action arises out of events that occurred between August 2020 and September 2023, when Melendez was enrolled as a law student at UNH Law.  See Fifth Complaint ¶ 224.  Melendez alleges he was diagnosed with a number of mental health disorders, including combat-related post-traumatic stress disorder, insomnia, paranoia, major depressive disorder and attention deficit hyperactivity disorder, which rendered him disabled.  See id.  ¶¶ 30, 61.  He further alleges that both the Department of Veteran's Affairs and the Social Security Administration rated him 100% disabled.  Id. ¶ 31.  Although Melendez does not state when he was diagnosed with his various mental health disorders or when he was rated 100% disabled, he alleges that he was "excluded from participating in a public entity's [UNH Law's] program or benefit, [or] class, by reason of his disabilities . . ." from August 2022 through December 2022.  Id. ¶ 61.

Plaintiff alleges that his mental health disorders interfered with his ability to understand instructions and to learn new information.  Id. ¶ 67.  As a result, Melendez alleges he had difficulty understanding the requirements of his law school courses, as well as the instructions for completing specific assignments.  Id.  ¶ 66.  He further alleges that the symptoms resulting from his impairments were "significantly aggravated by being in public[,]" and that the aggravation of his symptoms rendered him mentally incapable of completing social, work-related, or other necessary tasks.  Id. ¶¶ 62-63.  As described below, this made it difficult for him to attend classes in person.

### *Melendez's Requests for Accommodations*

Melendez's first year of law school, which began in the fall of 2020, took place during the COVID-19 pandemic.  Id. ¶ 124.  Due to the pandemic, Melendez's classes were initially remote, and he alleges he successfully completed his first two years of law school.[2]  Id. ¶¶ 125-26, 268.  Melendez alleges, however, that things changed in August 2022 (fall semester), the start of his third year of law school, when UNH resumed in-person classes.  He claims he was excluded from participating in UNH programs, classes and benefits as a result of his disabilities.  Id. ¶ 61.

Specifically, Melendez claims that prior to and throughout the fall 2022 semester, he made numerous requests for accommodations, both orally and in writing, that would have enabled him to attend classes despite his alleged disabilities.  See id. ¶¶ 64-70.  His requests included, among other things, the opportunity to attend all of his classes remotely.  Id. ¶ 64.  However, Melendez contends that defendants declined to provide him with any of the requested accommodations or offer a legitimate reason for their failure to do so, even though they were aware of his mental health conditions and need for the accommodations.  Id. ¶¶ 72-74, 83-85.  He further asserts that defendants' refusal to grant his requests deprived him of the opportunity to attend class, caused his mental health symptoms to worsen, and led to his wrongful dismissal from UNH Law, among other adverse impacts.  Id. ¶¶ 77-78.

### *The Fall 2022 Semester*

During the fall semester of 2022, Melendez took six courses, including Wills, Trusts and Estates, which was taught by defendant Nelson Raust ("Raust").  Id. ¶¶ 90, 128.  Melendez alleges

---

[2] Although Melendez alleges that he successfully completed his second year of law school, see Fifth Complaint ¶ 268, he does not indicate whether his second-year classes were held remotely or in person.

that on October 5, 2022, Raust humiliated him in front of the class, which rendered Melendez so emotionally damaged that he could no longer participate in the class.[3]  See id. ¶¶ 91-104, 106.

The experience in Raust's class, along with UNH Law's alleged failure to provide reasonable accommodations, prompted Melendez to file a complaint with UNH's Civil Rights and Equity Office ("CREO") in November 2022.  See id. ¶¶ 115-19.  In his complaint, Melendez asserted claims of discrimination against the defendants named in his Fourth Amended Complaint. Id. ¶ 119.  Melendez alleges that he sought assistance from CREO, for allegedly ongoing discrimination, through January 2023.  Id. ¶ 152.  Around that time, however, the CREO Director, defendant Emily Wilcox ("Wilcox"), determined that "there was no indication of discrimination or need to investigate, despite being given significant evidence discrimination may be occurring[,]" and she declined to conduct an investigation into Melendez's claims.  Id. ¶¶ 153, 158.  Melendez alleges that Wilcox's failure to investigate his allegations exposed him to additional acts of discrimination and caused him to suffer further emotional harm.  Id. ¶ 153.

### Plaintiff's Dismissal from UNH Law

Melendez received failing grades in five of the six courses he completed during the fall 2022 semester, a result he attributes to defendants' discriminatory conduct.  See id. ¶¶ 122, 130, 142.  His sole passing grade was in Criminal Clinic, the only course in which the professor allegedly provided him with his requested accommodations.  Id. ¶¶ 131-32, 134.  Melendez contends that his failing grades did not accurately measure his ability to succeed in law school. See id. ¶¶ 136-38.  Rather, he asserts that he received those grades "as a result of being denied accommodations" for his allegedly disabling mental health conditions.  Id. ¶ 273.

---

[3] The alleged October 5, 2022 incident is described in detail in the proposed Fifth Complaint.  For present purposes, it is unnecessary to describe those details here.

In September 2023, Melendez was disenrolled from UNH Law under the school's Academic Standing and Review policy. Id. ¶ 228; see also id. ¶ 224. Plaintiff contends that the decision to disenroll him violated the law school's written policies, deprived him of his right to due process, and was based on defendants' failure to accommodate his alleged disabilities. See id. ¶¶ 227-50. Plaintiff further contends that defendants' decision to disenroll him caused him to suffer "undue burden; aggravation of disability symptoms; financial loss; loss of reputation; humiliation; mental suffering; emotional distress; being wrongfully dismissed from the law school; and a significantly documented, permanent increase in disability rating." Id. ¶ 259. In the operative complaint, the Fourth Amended Complaint, Melendez asserts eighteen claims against defendants, including claims for violations of the ADA, IIED, casting plaintiff in a false light, conspiracy, and deprivation of his Fourteenth Amendment right to due process.

### *Plaintiff's Proposed Supplement to the Complaint*

Melendez requests leave to supplement his complaint to name two additional defendants - an unnamed "John Doe" defendant who works for Enterprise Technology and Services, the entity that functions as UNH's IT department, and Attorney Gregory Manousos, defendants' lead counsel in this action. Additionally, Melendez seeks to assert four new claims, including a claim for intrusion against John Doe (Claim 19); claims for IIED and conspiracy against John Doe and existing defendant, James Dean ("Dean") (Claims 20 and 21); and a claim for IIED against Attorney Manousos (Claim 22). These claims are based on events that allegedly occurred in or around January 2024 and March 2024.

Melendez alleges that on January 2, 2024, John Doe "covertly" accessed plaintiff's UNH email account without permission. Id. ¶ 284. Melendez claims he learned of the intrusion after receiving "an automated receipt and prompt" to complete a customer satisfaction survey regarding

IT's assistance with retrieving the password for the email account.  See id. ¶¶ 285-87.  Plaintiff claims he did not request a password or authorize access to his account.  Id. ¶¶ 288-89.  Although plaintiff alleges he subsequently received an email from John Doe directing him to "disregard the automated survey" because it was "out of date," plaintiff nevertheless concluded that John Doe negligently and maliciously accessed his email account without his permission.  See id. ¶¶ 291-93.  Melendez claims that "[d]ue to Plaintiff's mental vulnerability from serving in combat, Defendant Doe's malicious negligence of using technology to covertly obtain information significantly exacerbated Plaintiff's symptoms causing mental suffering and emotional distress." Id. ¶ 296.

The proposed supplement alleges that Melendez suffered further harm when UNH Law deleted his email account in or around March 2024.  Specifically, Melendez claims that defendant Dean directed John Doe to delete Melendez's account.[4]  Id. ¶ 297.  Plaintiff alleges he spoke with "Tara" from Enterprise Technology and Services, who allegedly verified that his account had been deleted.  Id. ¶ 298.  Melendez contends that because of defendants' actions, he lost access to documents he needed to proceed with the present litigation, as well as access to email communications between himself and defendants' counsel.  Id. ¶¶ 299-300.  Moreover, Melendez claims that defendants' actions were intentional and part of an agreement "to continue the discriminatory and hostile treatment" against him by UNH and the remaining defendants.  Id. ¶¶ 306, 309.

---

[4] Melendez claims that Dean acted "maliciously" by directing John Doe to delete plaintiff's email account, and that John Doe acted "maliciously" by carrying out Dean's instruction because there was no legitimate reason for their actions.  Fifth Complaint ¶ 301.  He also claims that the deletion of his email violated UNH policy, which allows former students to maintain access to their school email accounts for a period of time.  Id. ¶¶ 302-04.

Melendez alleges that Attorney Manousos "furthered the discriminatory behavior" towards plaintiff and "recklessly inflict[ed] emotional damage" on Melendez when Attorney Manousos tried to "coerce" Melendez not to file the instant motion.  See id. ¶¶ 315, 321.  Specifically, Melendez alleges that when he emailed Attorney Manousos a copy of his proposed supplemental complaint, as required by Local Rule 7.1(c),[5] Attorney Manousos provided "no legal authority" to support his opposition to the motion.  Id. ¶¶ 313, 316.  Instead, Melendez alleges that in his emailed response, Attorney Manousos disputed the facts alleged in support of plaintiff's proposed claims against Dean and John Doe – particularly Melendez's assertion that his UNH email account had been deleted – and he provided plaintiff with instructions for accessing his account and resolving any continuing access problems he might encounter.  Pl. Ex. 1 at 2-3, 6-7; see also Def. Ex. B at 1.  In his response, Attorney Manousos also asserted that Melendez's allegations regarding John Doe's unauthorized access to his email account "is false and lacks any factual support."  Def. Ex. B at 1.  Specifically, Attorney Manousos explained that the automated email Melendez received on January 2, 2024, which prompted Melendez to complete a customer satisfaction survey, related to a call that Melendez made to Enterprise Technology & Services in August 2022, and was sent out in error.[6]  Id.  Attorney Manousos then warned the plaintiff as follows:

---

[5] Local Rule 7.1(c) provides in pertinent part: "Any party filing a motion other than a dispositive motion shall certify to the court that a good faith attempt has been made to obtain concurrence in the relief sought."

[6] Melendez argues that Attorney Manousos violated Local Rule 7.1(c) by failing to raise good faith objections to his motion to supplement the complaint.  Doc. No. 46-1 at 2-4.  This court disagrees.  As described in Note 5 above, Local rule 7.1(c) requires a moving party to seek concurrence before filing a motion with the court.  It does not impose any requirements upon the party opposing the motion.  In any event, Attorney Manousos provided Melendez with a good faith basis for his refusal to assent to the motion.  There was nothing improper about his argument that Melendez's proposed claims were based on an inaccurate understanding of the relevant facts.

Should you proceed with the proposed Motion to Amend and therefore present demonstrably false statements to the Court, UNH will oppose the Motion. In addition, because the proposed Motion is frivolous and not advanced in good faith, we will ask the Court to require you to pay UNH's attorney's fees in opposing this Motion and to issue other sanctions against you, as appropriate.

Id.[7]

Melendez asserts that this letter was improper because Attorney Manousos provided no legal authority for his assertion that the proposed claims against Dean and John Doe lacked merit. Fifth Complaint ¶¶ 314, 316. He also alleges that Attorney Manousos used his position as an attorney "to coerce Plaintiff Melendez into not filing the supplemental complaint." Id. ¶ 315. Melendez claims that Attorney Manousos' conduct constituted an abuse of authority, "furthered the discriminatory behavior Plaintiff Melendez was exposed to," and caused plaintiff to suffer emotional distress. Id. ¶ 321. Melendez contends he experienced "undue burden; aggravation of disability symptoms; mental suffering; and emotional distress" because of Attorney Manousos' behavior. Id. ¶ 327. Pursuant to his proposed supplemental claims, Melendez seeks damages against Attorney Manousos, John Doe, and Dean for their alleged misconduct.

---

[7] In their opposition to the motion to supplement, defendants repeated Attorney Manousos' assertion that the plaintiff's motion is "frivolous." See Doc. No. 45 at 2. Melendez argues that Attorney Manousos' characterization of his motion as "frivolous" violates Rule 11 of the Federal Rules of Civil Procedure because it is baseless and serves no legitimate purpose "other than to harass Plaintiff Melendez and cause unnecessary delay[.]" Doc. No. 46-1 at 4-5. The relevant provisions of Rule 11 prohibit "filings made with 'any improper purpose,' the offering of 'frivolous' arguments, and the assertion of factual allegations without 'evidentiary support' or the 'likely' prospect of such support." Young v. City of Providence ex rel. Napolitano, 404 F.3d 33, 39 (1st Cir. 2005) (quoting Fed. R. Civ. P. 11(b)). As described below, defendants raised legitimate, persuasive challenges to Melendez's motion to supplement. The inclusion of passing references to plaintiff's motion as "frivolous" in their opposition to the motion does not violate Rule 11 or warrant scrutiny by the court.

**LEGAL STANDARD**

Federal Rules of Civil Procedure 15(d) provides in relevant part: "On motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d). "Courts, including this one, generally assess motions to supplement pleadings under the same standard applicable to motions to amend." Mueller Co. v. U.S. Pipe & Foundry Co., 351 F. Supp. 2d 1, 2 (D.N.H. 2005). Accordingly, "courts customarily have treated requests to supplement under Rule 15(d) liberally." U.S. ex rel. Gadbois v. PharMerica Corp., 809 F.3d 1, 7 (1st Cir. 2015).

"This does not mean, however, that motions for supplementation should be granted automatically." Id. As an initial matter, "it is implicit in the logic of Rule 15(d) that a motion to supplement may be denied where the referenced events occurred before the filing of the original complaint." Id. (footnote omitted). Additionally, "leave to supplement may be withheld when the request would unduly delay resolution of the case." Id. (quotations and citations omitted). Moreover, as the First Circuit explained:

> a district court faced with a Rule 15(d) motion [to supplement] must weigh the totality of the circumstances, just as it would [on a motion to amend] under Rule 15(a). Idiosyncratic factors -- say, the futility of supplementation, prejudice to the opposing party, and unreasonable delay in attempting to supplement -- may suffice to ground a denial of a Rule 15(d) motion. Everything depends on context.

Id. (internal citations omitted).

In assessing whether a plaintiff's proposed claims are futile, "the district court must apply the standard which applies to motions to dismiss under Fed. R. Civ. P. 12(b)(6)." Adorno v. Crowley Towing & Transp. Co., 443 F.3d 122, 126 (1st Cir. 2006). Pursuant to this standard, the court must "accept as true all well-pleaded facts set forth in the [proposed] complaint and draw all

reasonable inferences therefrom in the pleader's favor." Artuso, 637 F.3d at 5. Although the proposed supplemental claims need only contain "a short and plain statement of the claims showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), they must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Thus, they "must include more than a rote recital of the elements of a cause of action; [they] must include 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" Artuso, 637 F.3d at 5 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)). "If the factual allegations in the [proposed] complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of conjecture," the plaintiff's motion to supplement will be denied. Id. (quoting SEC v. Tambone, 597 F.3d 436, 442 (1st Cir. 2010)).

## DISCUSSION

In the motion to supplement, Melendez asserts four new claims and adds two new defendants. He contends that the court should grant him leave to supplement the Fourth Amended Complaint because defendants continued to engage in discriminatory and hostile behavior against him. See Doc. No. 46-1 at 2. Defendants argue that Melendez's motion should be denied because his proposed supplemental claims are futile and will cause them undue prejudice. Doc. No. 45 at 10-14. They also argue that the motion should be denied because Melendez failed to make a good faith attempt to obtain their concurrence before filing his motion, as required by Local Rule 7.1(c). Id. at 14-15. After consideration of the parties' arguments, this court recommends that the district judge deny the motion to supplement on the grounds of futility and undue prejudice.

## I.    <u>Futility of Melendez's Claim of Intrusion (Claim 19)</u>

In the Fifth Complaint, Melendez seeks to add an intrusion claim against John Doe (Claim 19) for allegedly accessing Melendez's email account without his knowledge or prior permission. Defendants argue that this claim is futile because it fails to allege sufficient facts to state a claim for intrusion under New Hampshire law.  <u>Id.</u> at 10-11.  This court agrees.

New Hampshire law governing claims for intrusion is consistent with the <u>Restatement (Second) of Torts</u> § 652B (1977), which provides that "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person."  The New Hampshire Supreme Court has ruled that such claims "must relate to 'something secret, secluded or private pertaining to the plaintiff.'"  <u>Fischer v. Hooper, 143 N.H. 585, 590 (1999)</u> (quoting <u>Hamberger v. Eastman, 106 N.H. 107, 110 (1964)</u>).  It has also ruled that "liability exists only if the defendant's conduct was such that he should have realized that it would be offensive to persons of ordinary sensibilities.  It is only where the intrusion has gone beyond the limits of decency that liability accrues."  <u>Id.</u> (quoting <u>Hamberger, 106 N.H. at 111</u>).

In the instant case, Melendez fails to allege sufficient facts to state a plausible claim for intrusion against John Doe.[8]  As described above, Melendez's assertion that John Doe obtained unauthorized access to his email account was based on his receipt of an automated email receipt and prompt to complete a survey to rate the customer service associated with the recovery of his email password.  <u>See</u> Fifth Complaint ¶¶ 285-90.  However, Melendez further alleges that later the

---

[8] In his Reply to Defendant's Objection to Plaintiff's Supplemental Complaint, Melendez argues that defendants improperly relied on "unauthorized discovery" to oppose his motion to supplement to add an intrusion claim.  Doc. No. 46-1 at 7-8.  As indicated above and in footnote 1 <u>supra</u>, this court has not considered any facts that are outside the complaint and may not otherwise be considered under <u>Fed. R. Civ. P. 12(b)(6)</u>.

same day, he received a follow-up email from John Doe instructing him to disregard the automatic survey because it was out of date.  Id. ¶¶ 292-93.  These allegations undermine the plaintiff's assertion that there was any unauthorized access to his email account.

Melendez's conclusory and speculative allegation that "[d]efendant Doe's follow-up email was an attempt to have Plaintiff Melendez overlook the fact [that] the automated response exposed the unauthorized access to Plaintiff's account" is inadequate to support his claim that defendant Doe intruded upon his email account.  See id. ¶ 295.  Besides his unsupported speculation, Melendez alleges no facts that demonstrate (or even arguably suggest) that John Doe was engaged in a cover up to hide improper behavior.  Accordingly, he fails to allege a plausible claim for intrusion against John Doe.  See Bell Atl. Corp., 550 U.S. at 555 (to state a plausible claim for relief, the plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level[.]").

Even if the court were to accept Melendez's conclusory and speculative allegations, the alleged facts would still fall short of meeting the applicable pleading standard.  Even with the liberal pleading standard afforded pro se litigants, the Fifth Complaint fails to allege any facts to show that John Doe's conduct "would be offensive to persons of ordinary sensibilities" or exceed "the limits of decency[.]"  Fischer, 143 N.H. at 590 (internal quotation marks and citation omitted). Melendez does not allege that John Doe read any of his emails or reviewed any information that could be considered sensitive or confidential.  Nor does he allege any facts explaining why it was offensive or otherwise improper for a member of UNH's IT department to access a student email account or recover a user's password.  Because Melendez has not shown that John Doe's alleged intrusion "would be highly offensive to a reasonable person[,]" this court recommends that the district judge deny plaintiff's motion in this regard.

II.    <u>**Futility of Melendez's Claims for IIED (Claims 20 and 22)**</u>

In his proposed Fifth Amended Complaint, Melendez seeks to add two claims for IIED, specifically: 1 - Claim 20, against Dean and John Doe based on their alleged conduct in deleting his UNH email account in March 2024, and 2 - Claim 22, against Attorney Manousos based on Attorney Manousos' communications with Melendez regarding the filing of the instant motion to supplement the complaint.   Defendants argue that plaintiff's motion to supplement should be denied with respect to these claims because Melendez failed to allege sufficient facts to show that the challenged conduct was extreme and outrageous or that the emotional distress Melendez allegedly suffered was sufficiently severe to state a claim for relief.   Doc. No. 45 at 11-12.   This court finds these arguments persuasive and recommends that the motion to supplement be denied with respect to these claims.

"To state a claim of intentional infliction of emotional distress in New Hampshire, a plaintiff must allege that a defendant: (1) by extreme and outrageous conduct, (2) intentionally or recklessly caused (3) severe emotional distress."   Doe v. West Alton Marina, LLC, 646 F. Supp. 3d 315, 321-22 (D.N.H. 2022).   "In determining whether conduct is extreme and outrageous, it is not enough that a person has 'acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by malice.'"   Mikell v. Sch. Admin. Unit No. 33, 158 N.H. 723, 729 (2009) (additional quotation marks omitted) (quoting Restatement (Second) of Torts § 46 cmt. d at 73 (1965)).   Rather, "[l]iability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."   Id. (quoting Restatement (Second) of Torts § 46 cmt. d at 73 (1965)).   "[W]ith respect to the third element (severe emotional harm), '[t]he law intervenes only where the

16

distress inflicted is so severe that no reasonable [person] could be expected to endure it.'" West Alton Marina, 646 F. Supp. 3d at 322 (second and third alterations in original) (quoting Morancy v. Morancy, 134 N.H. 493, 496 (1991)). "Liability does not extend to situations that may very well be upsetting but are nonetheless a consequence of regular participation in society." Id.

A.    Failure to state an IIED claim against James Dean and John Doe (Claim 20)

In Count 20 of his proposed Fifth Complaint, Melendez alleges that in or about March 2024, approximately six months after Melendez was disenrolled from UNH Law, John Doe, acting upon instructions from Dean, deleted plaintiff's UNH email account. Fifth Complaint ¶¶ 297-98. Melendez claims that this conduct was malicious and violated a UNH policy that allows UNH students to maintain their email accounts for a period of time after leaving the school. Id. ¶¶ 302-03. He also claims that the deletion of his account prevented him from having access to emails and other documentation that he needs to litigate this case. Id. ¶¶ 299-300. Melendez alleges that Dean's and John Doe's tortious conduct caused him "undue burden; aggravation of disability symptoms; loss of reputation; humiliation; mental suffering; and emotional distress." Id. ¶ 308.

The allegedly "malicious" and premature termination of a former student's email account, even when such conduct violates an internal policy, falls far short of the extreme and outrageous conduct necessary to maintain an IIED claim. Compare West Alton Marina, 646 F. Supp. 3d at 324-26 (allegations that defendants knew about and facilitated sexual abuse of minors in the workplace were sufficient to satisfy the extreme and outrageous requirement of an IIED claim) with Banks v. Hall, No. 10-cv-269-JL, 2012 WL 3263607, at *2 (D.N.H. Aug. 9, 2012) (ruling that no rational factfinder could conclude that state troopers' conduct in kicking, tasering and siccing a police dog on the plaintiff was sufficient to support a claim for IIED, even if it amounted to excessive force that violated plaintiff's Fourth Amendment rights); Davis v. United Postal Serv.,

Inc., No. Civ. 02-585-B, 2003 WL 21146167, at *3 (D.N.H. May 16, 2003) (noting that "discrimination on the basis of disability, verbal harassment and retaliation are not, without more, sufficient to support an [IIED] claim," but denying motion to dismiss based on plaintiff's allegation that defendant interfered with his access to medical care in retaliation for plaintiff's complaints about discrimination); Mikell, 158 N.H. at 729 (finding that teacher's false accusation of misconduct against a student who subsequently committed suicide did not "rise[ ] to the level of extreme and outrageous conduct necessary to sustain a claim for [IIED].").  While Dean's and Doe's alleged actions may have violated UNH policy and caused plaintiff significant stress and inconvenience, there is nothing "atrocious" about their conduct, nor can it be deemed "utterly intolerable in a civilized community."  West Alton Marina, 646 F. Supp. 3d at 322 (quotations and citations omitted).  Melendez's characterization that defendants' actions were "malicious" and intended to cause him harm does not elevate the alleged conduct to the level of atrocity necessary to maintain a claim for IIED against these defendants.  See Mikell, 158 N.H. at 729 (for purposes of an IIED claim, it is not enough that the defendant acted with a tortious or criminal intent, intended to inflict emotional distress or acted maliciously).  Accordingly, Claim 20 of the proposed complaint fails to state a plausible claim for relief.

Even if this court concluded the proposed complaint alleged conduct that was sufficiently extreme and outrageous to support an IIED claim, Claim 20 would still be futile because Melendez does not allege he suffered severe emotional distress.  See West Alton Marina, 646 F. Supp. 3d at 321-22 (to state an IIED claim, plaintiff must allege, among other elements, that a defendant caused severe emotional distress).  Although Melendez claims that his disability symptoms were aggravated, and that he experienced mental and emotional distress due to the alleged deletion of his email account, he has not alleged any specific facts to demonstrate that his distress was so

significant and of such a nature "that no reasonable man could be expected to endure it." Morancy, 134 N.H. at 496 (quoting Restatement (Second) of Torts § 46, cmt. j).  Nor does the loss of his student email account six months after he was disenrolled from UNH Law support an inference that the emotional distress Melendez experienced was anything more than "a consequence of regular participation in society." West Alton Marina, 646 F. Supp. 3d at 322.  Therefore, Melendez fails to satisfy the third element of his IIED claim against Dean and John Doe, and his motion to supplement the complaint to include such a claim should be denied.

B.    Failure to state an IIED claim against Attorney Manousos (Claim 22)

In Claim 22 of his proposed Fifth Complaint, Melendez claims that Attorney Manousos "used his position" as an attorney in an attempt "to coerce Plaintiff Melendez from accessing the court" and filing the instant motion.  Specifically, Melendez alleges that during the parties' email communications regarding his plan to file the instant motion to supplement the complaint, Attorney Manousos failed to articulate a legal basis for opposing the motion, and instead, threatened to seek sanctions against Melendez "for raising legally acceptable claims."  Fifth Complaint ¶¶ 314-16.  He also alleges that Attorney Manousos' use of "coercion" to try to convince Melendez not to file the instant motion caused plaintiff to suffer emotional distress.  See id. ¶¶ 320-22, 326-27.  In particular, Melendez claims that he suffered "undue burden; aggravation of disability symptoms; mental suffering; and emotional distress" as a result of Attorney Manousos' conduct.[9]  Id. ¶ 327.  Plaintiff's allegations fall short of stating a claim for IIED, and thus, his attempt to add Claim 22 should be denied as futile.

---

[9] In his Reply, Melendez argues that Attorney Manousos' effort to keep him from filing the instant motion, as well as defendants' opposition to the instant motion to supplement, manifest an intent to infringe on Melendez's Fourteenth Amendment right of access to the courts. See Doc. No. 46-1 at 10. This argument provides no support for Melendez's motion. Although there can be no dispute that "[t]here is a constitutional right of access to the courts" Rogan v. City of Boston, 267 F.3d 24,

As an initial matter, Attorney Manousos' conduct, even if it were meant to deter plaintiff from accessing the court, does not rise to the level of extreme and outrageous conduct necessary to maintain an IIED claim. In his emails, Attorney Manousos disputed the accuracy of the facts alleged in Melendez's proposed supplemental claims against Dean and John Doe, and urged Melendez not to file the instant motion to supplement on the grounds that it lacks merit. There is nothing extreme or outrageous about a lawyer investigating the facts alleged by the opposing party, disputing the plaintiff's alleged version of the relevant facts or advocating for himself and his clients in connection with ongoing litigation.[10] Nor is there anything extreme or outrageous about a lawyer threatening to move for sanctions based on his assessment that the opposing party's proposed motion is frivolous and not advanced in good faith. See Tessier v. Rockefeller, 162 N.H. 324, 341 (2011) ("Liability for intentional infliction of emotional distress 'clearly does not extend to mere . . . threats.'" (quoting Restatement (Second) of Torts § 46 cmt. d)). Additionally, Melendez's characterization of Attorney Manousos' statements as "coercive" is insufficient to allege extreme and outrageous conduct.[11] See Mikell, 158 N.H. at 729 (for purposes of

---

28 (1st Cir. 2001), Melendez has not alleged or attempted to allege such a claim against any of the defendants in this action. Additionally, as the docket in this case demonstrates, Melendez has ample access to the courts. Therefore, his argument on this issue is inadequate to warrant relief with respect to his present motion.

[10] Melendez argues that Attorney Manousos violated Rule 26(d) of the Federal Rules of Civil Procedure by investigating the facts relating to Melendez's IIED claims and relying upon them in the opposition to the motion to supplement the complaint. See Doc. No. 46-1 at 5-7. Rule 26(d) provides in relevant part that "[a] party may not seek discovery from any source before the parties have conferred" regarding a plan to complete discovery. Fed. R. Civ. P. 26(d)(1). However, there is no indication that Attorney Manousos engaged in any formal discovery or that his investigation violated any applicable rules. Rule 26(d) does not preclude a party from engaging in an investigation regarding the factual basis for plaintiff's claims.

[11] In deciding whether allegations are sufficient to state a claim of extreme and outrageous conduct, courts consider a variety of factors, including whether "the defendant abused a 'position of power over' the plaintiff[.]" West Alton Marina, 646 F. Supp. 3d at 322 (quoting Mikell, 158 N.H. at

determining whether conduct is "extreme and outrageous, it is not enough that a person has acted with an intent which is tortious or even criminal" (quotations and citation omitted)).  Therefore, he fails to satisfy the first element of an IIED claim against Attorney Manousos.

Claim 22 of the proposed complaint also fails to state a plausible claim for IIED because Melendez fails to allege that he suffered severe emotional distress as a result of Attorney Manousos' conduct.  As in the case of his IIED claim against Dean and John Doe, Melendez alleges that his disability symptoms were aggravated, and that he experienced mental and emotional distress, due to Attorney Manousos' email communications.  See Fifth Complaint ¶ 327.  However, he has not alleged any facts showing that his emotional distress was extreme or severe.  The fact that Attorney Manousos' threat to seek sanctions against Melendez did not dissuade plaintiff from filing his motion to supplement the complaint suggests that any emotional distress he suffered was nothing more than the type of distress that comes as "a consequence of regular participation in society" and does not give rise to a claim for IIED.  See West Alton Marina, 646 F. Supp. 3d at 322 (liability for IIED "does not extend to situations that may very well be upsetting but are nonetheless a consequence of regular participation in society.").  For this reason as well, this court concludes that Claim 22 fails to state a plausible claim for relief and is therefore futile.

---

729).  To the extent Melendez claims that Attorney Manousos exercises authority or power over him, his allegations are insufficient to make such a showing.  Although Melendez alleges that Attorney Manousos "abused his authority" as a licensed attorney "in attempts to coerce Plaintiff Melendez to endure further discrimination by not seeking assistance from the Court," he alleges no facts showing how Attorney Manousos' role as litigation counsel for the defendants gave him power over the plaintiff.  See FAC ¶¶ 321-22.  On the contrary, the record demonstrates that Melendez has had no limitations on his ability to seek assistance from the court and that Attorney Manousos was unsuccessful in his effort to convince Melendez not to file his instant motion to supplement the complaint.

III.    **Futility of Melendez's Claim for Conspiracy Against Dean and John Doe**
        **(Claim 21)**

Finally, in Claim 21 of his Fifth Complaint, Melendez alleges that Dean and John Doe

conspired "to continue the discriminatory and hostile treatment of Plaintiff Melendez, specified in

Claim 20" – i.e., they conspired to prematurely terminate his UNH email account.  Under New

Hampshire law, "[a] civil conspiracy is a combination of two or more persons by concerted action

to accomplish an unlawful purpose, or to accomplish some purpose not in itself unlawful by

unlawful means."  Jay Edwards, Inc. v. Baker, 130 N.H. 41, 47 (1987) (quotations and citation

omitted).   To state a claim for civil conspiracy, plaintiff must allege the following essential

elements:

> (1) two or more persons (including corporations); (2) an object to be accomplished
> (i.e. an unlawful object to be achieved by lawful or unlawful means or a lawful
> object to be achieved by unlawful means); (3) an agreement on the object or course
> of action; (4) one or more unlawful overt acts; and (5) damages as a proximate
> result thereof.

Id. (emphasis omitted).  Melenedez has not alleged sufficient facts to satisfy these elements, and

therefore, Claim 21 fails to state a plausible claim for relief.

First, Melendez does not allege the existence of an agreement between Dean and John Doe.

Although Melendez alleges that Dean "directed" John Doe to delete plaintiff's student email

account, he does not allege any facts showing that defendants acted in concert.   See Fifth

Complaint ¶ 297.  Nor does he allege any facts to support an inference that the alleged deletion of

his student email account was based on an agreement between Dean and John Doe rather than

Dean's decision.  Melendez's motion to add a conspiracy claim should therefore be denied on the

basis of futility.

Next, even assuming the existence of an agreement between Dean and John Doe, Melendez

has not alleged any facts or presented any legal authority to show that the termination of a former

student's email account was unlawful.  Similarly, Melendez has not alleged facts or presented any legal authority to show that the deletion of his account was achieved by unlawful means.  For this reason as well, he cannot sustain a conspiracy claim based on the alleged circumstances.

To the extent Melendez claims that defendants engaged in a conspiracy to inflict emotional distress, his allegations are equally insufficient to state a plausible claim for relief.  As described above, Melendez does not allege the necessary elements of an IIED claim against Dean and John Doe.  Therefore, he cannot show that they engaged in a conspiracy to commit an unlawful act.  Furthermore, because Melendez fails to show that there is anything unlawful about the termination of a former student's email account, he has not alleged that Dean and John Doe used unlawful means to achieve the object of a conspiracy- i.e., the infliction of emotional distress.  Accordingly, this court recommends that plaintiff's motion to supplement his complaint to add Claim 21 be denied.

## IV.    **Undue Prejudice**

Defendants argue that Melendez's motion to supplement should also be denied on the grounds of undue prejudice.  Again, this court agrees.  This case has been pending for over a year and has not moved beyond the pleading stage.  Plaintiff's repeated amendments to his complaint, while not improper, prevented the court from reaching defendants' motions to dismiss on the merits or otherwise advancing this case toward a final resolution.  Allowing the motion to supplement would cause further delay and prevent defendants, once again, from having their pending motion to dismiss addressed on the merits.  It would also force defendants to incur the expense of filing a new or supplemental motion to dismiss.  Therefore, defendants demonstrated they would suffer undue prejudice if plaintiff's motion were allowed.  See Gonzalez-Santos v. Torres-Maldonado, 276 F.R.D. 412, 414 (D.P.R. 2011) (denying plaintiff's motion for leave to file a sixth amended

complaint due, in part, to "the undue prejudice that would be caused to defendants if the motion were granted").

Defendants would suffer further undue prejudice if plaintiff were permitted to supplement his complaint to include Attorney Manousos as another defendant. Attorney Manousos is defendants' lead litigation counsel. Naming him as a defendant could lead to conflicts with his clients, force him to testify as a witness and/or force his withdrawal from this case. It would also likely raise difficult issues relating to the attorney-client privilege and work product doctrine. These issues could cause significant, additional delays in the proceedings. Therefore, this court concludes that undue prejudice further warrants the denial of Melendez's motion to supplement his complaint.[12]

## CONCLUSION

For the foregoing reasons, this court recommends that "Plaintiff's Motion for Leave to Supplement Complaint" (Doc. No. 42) be DENIED. Any objections to this Report and Recommendation must be filed within twenty-one (21) days of receipt of this notice. The twenty-one day period may be extended upon motion. Failure to file any objection within the specified time waives the right to appeal the district court's Order. See Santos-Santos v. Torres-Centeno, 842 F.3d 163, 168 (1st Cir. 2016). Only those issues raised in the objection(s) to this Report and Recommendation "are subject to review in the district court" and any issues "not preserved by such objection are precluded on appeal." Sch. Union No. 37 v. United Nat'l Ins. Co., 617 F.3d

---

[12] Considering this court's conclusion that Melendez's motion should be denied on the grounds of futility and undue prejudice, the court need not reach defendants' argument that the motion should be denied on the grounds that Melendez failed to make a good faith attempt to obtain defendants' concurrence regarding his motion, as required by Local Rule 7.1(c). See Doc. No. 45 at 14-15.

554, 564 (1st Cir. 2010) (quoting Keating v. Sec'y of Health & Hum. Servs., 848 F.2d 271, 275

(1st Cir. 1988)).

_____

Talesha L. Saint-Marc
United States Magistrate Judge

July 2, 2024

cc:     Michael Melendez, pro se
        Counsel of record